OPINION OF THE COURT
David B. Saxe, J.
These motions to quash nonparty subpoenas served on John Cardinal O’Connor relate to two actions brought in Texas against the Roman Catholic Church and various individuals in its hierarchy, arising out of allegations of sexual abuse by a priest named Robert R. Peebles. One of the two Texas actions initially named Cardinal O’Connor as a defendant; however, the Cardinal was dismissed as a defendant on jurisdictional grounds, based upon insufficient contacts with Texas. The plaintiffs in the two Texas actions have obtained open commissions from that court to depose Cardinal O’Connor, this court issued ex parte subpoenas pursuant to CPLR 3102 (e), and the Cardinal now moves for protective orders and to quash the subpoenas.
The chronology of the basic facts and allegations underlying the Texas actions are as follows.
On January 5, 1982, Father Peebles was endorsed for military chaplaincy by the Military Vicariate in Texas. At that time, Cardinal O’Connor was the Auxiliary Bishop and a corporate official of the Military Vicariate. On May 10, 1983, Cardinal O’Connor relinquished his position in Texas and was appointed Bishop of Scranton, Pennsylvania. From January 26, 1984 to the present, Cardinal O’Connor has served as the Archbishop of New York. In addition, from January 1984 to March 1985, Cardinal O’Connor also served as the Apolistic Administrator of the Military Vicariate.
On or about March 18/19, '1984, the defendant Father Peebles allegedly sexually abused the plaintiff John Doe I. The plaintiff John Doe IV claims that the defendant Father Peebles sexually abused him sometime in June 1992.
"The court’s inquiry with respect to objections raised by persons required to testify pursuant to CPLR 3102 (e) is limited to determining (1) whether the witnesses’ fundamental rights are preserved; (2) whether the scope of inquiry falls within the issues of the pending out-of-State action; and (3) whether the examination is fair. (Matter of Brandes [Harris], 78 AD2d 638, 639.) The courts 'will not prejudge the materiality or the competency of the evidence in a cause pending in another jurisdiction and will afford the widest possible latitude in the *45 conduct of such examinations.’ (Matter of Roberts, 214 App Div 271, 275.)” (Matter of Ayliffe & Cos., 166 AD2d 223, 224 [1st Dept 1990].) Of course, the court has the authority to grant a protective order in order to "prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice” (CPLR 3103 [a]).
The Cardinal asserts that he has no knowledge surrounding the Texas matter, and that therefore his fundamental rights would be violated by requiring him to appear for a deposition. However, a witness’s plea of lack of knowledge alone is not necessarily dispositive (see, Potar v Potar, 27 Misc 2d 825); rather, the court should examine the allegations supporting the need for the deposition and the right to obtain it.
The prominent position that Cardinal O’Connor holds in the hierarchy of the Roman Catholic Church of the United States tends to lend credence to his assertion that his deposition is sought not to obtain necessary information as to events and circumstances at issue in the Texas actions, but for the purpose of promotion, publicity, or strategic value. It is therefore incumbent upon this court to carefully scrutinize the basis for the claimed need for his deposition.
It is suggested in petitioner’s supporting papers that the Cardinal "has substantial knowledge as to the facts surrounding the * * * endorsements of Father Peebles for Army Chaplaincy because Cardinal O’Connor had been an official of the Military Vicariate”. What is noteworthy about this assertion is not the claim that the Cardinal has knowledge, but that his alleged knowledge was obtained and possessed as an official with the Military Vicariate, one of the named defendants in the Texas actions. Thus, the deposition sought does not fall squarely into the category of "nonparty” deposition; rather, the Cardinal’s deposition is better viewed as sought in his capacity as an official of the defendant. As such, the parties seeking his deposition should be required to show that the representatives that defendant provided for deposition possessed inadequate information (see, National Reporting v State of New York, 46 AD2d 576, 578). Particularly where a defendant, be it corporation or unincorporated association, has provided witnesses with knowledge of the facts and circumstances, only a demonstration of special circumstances entitles the plaintiff to then obtain the deposition of another witness affiliated with the defendant (see, JMJ Contract Mgt. v Ingersoll-Rand Co., 100 AD2d 291; Smith v Robilotto, 27 AD2d 684).
*46 Review of the depositions of the witnesses proffered by the defendant Military Vicariate does not reveal any question for which the witnesses lacked knowledge which is possessed by Cardinal O’Connor. Indeed, petitioner points to no instance in which the knowledge possessed by the witnesses was insufficient.
As to the petitioner’s argument that Cardinal O’Connor possesses information regarding the policies of the Military Vicariate as to the endorsement of clerics despite known proclivities to sexual abuse, it is information best sought through the deposition of the witnesses proffered by the Military Vicariate, although it does not appear that any questions on the topic were even asked of those witnesses.
The conclusion is inescapable that the deposition of Cardinal O’Connor is improper and constitutes unnecessary harassment. The motions to quash the subpoenas are therefore granted.