*74 OPINION OF THE COURT
Harold Tompkins, J.
The confidentiality of documents of a foreign corporation in the files of the law firm representing it is the issue before this court. This issue arises out of the $1.7 billion action now pending in the State of Minnesota, County of Ramsey, District Court, Second Judicial District, entitled “The State of Minnesota, by Hubert H. Humphrey, III, its Attorney General and Blue Cross and Blue Shield of Minnesota, Plaintiffs, v. Philip Morris Incorporated, R. J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, B.A.T. Industries P.L.C., British-American Tobacco Company Limited, BAT (U.K. & Export) Limited, Lorillard Tobacco Company, the American Tobacco Company, Liggett Group, Inc., the Council for Tobacco Research-U.S.A., Inc., and the Tobacco Institute, Inc., defendants” (hereinafter Humphrey).
This Minnesota action seeks $1.7 billion in damages for Medicaid recoupment on a variety of legal theories. As part of the discovery process in that action, extensive documents were directed to be produced. As elaborated below, part of the documents sought to be produced relate to a tobacco company, Gallahers, that manufactures and sells cigarettes in the United Kingdom and which is represented by respondent, Chadbourne & Parke. The ability to secure these documents is the issue confronted by this court.
PROCEDURAL HISTORY
Humphrey is a Medicaid recoupment action commenced in Minnesota in August 1994 against United States and some British tobacco companies, tobacco research and tobacco lobbying organizations. As part of the discovery process, Judge Kenneth Fitzpatrick by order dated May 8, 1997 directed Brown & Williamson to provide information regarding smoking and health research including documents located at American Brands, Gallaher Limited, Chadbourne & Parke and Brown & Williamson and deposition testimony regarding the above issues as well as advertisement and marketing. Judge Fitzpatrick made findings as to corporate interrelationships and name changes. Specifically, he found that Gallaher was a sister corporation to American Tobacco, a defendant in the Humphrey case and that American Tobacco had been merged with Brown & Williamson. Pursuant to his order, Brown & Williamson sought access to American Brands’ and Gallaher’s files. This request was refused by Gallaher and American Brands *75 stated it did not have any of the demanded documents. On June 18, 1997, Judge Fitzpatrick held that Brown & Williamson had wilfully violated his order directing production of documents. Brown & Williamson appealed this ruling as well as seeking a writ of prohibition. The Minnesota Court of Appeals by order dated July 22, 1997 denied the appeals and dismissed the petition, noting that Minnesota does not permit interlocutory appeals of nondispositive pretrial rulings. The Minnesota Supreme Court denied Brown & Williamson’s petition for further review by order dated November 13, 1997. Thereafter on December 30, 1997, Judge Fitzpatrick imposed sanctions on Brown & Williamson. These sanctions included payment of plaintiffs’ costs, a monetary fine of $100,000,[1] a finding that certain documents were held nonprivileged and he stated that if Brown & Williamson and American Tobacco did not cure their violations, an additional $100,000 per day fine could be imposed. Finally, Judge Fitzpatrick considered imposing the additional sanction of giving the jury a missing document charge or finding that the failure to produce documents established plaintiffs’ allegations against Brown & Williamson and American Tobacco on smoking, health, research, advertising, marketing and promotion of cigarettes or entering a default judgment against Brown & Williamson and American Tobacco. Brown & Williamson filed a supplemental response on January 9, 1998. On January 15, 1998, Brown & Williamson obtained an order from Judge Fitzpatrick granting it permission to take the deposition of Chadbourne & Parke as a nonparty witness to obtain records and testimony. The Humphrey trial commenced on or about January 20, 1998. The trial is estimated to last approximately four months. On January 22, 1998, Justice William McCooe of the New York State Supreme Court issued an exparte order pursuant to CPLR 3102 (e) permitting Kirkland & Ellis (Brown & Williamson’s new counsel) to take the deposition of Chadbourne & Parke and to produce the demanded records on January 30, 1998. On January 29, 1998, Chadbourne & Parke moved to quash the subpoena. After the submission of papers, in mid-February 1998, this court scheduled oral argument for March 4, 1998. On March 4, 1998, this court heard oral argument on the record from counsel for both parties.
*76 VALIDITY OF THE SUBPOENA
Chadbourne & Parke asserts that the subpoena should be quashed. The dispute concerns documents belonging to Gallaher, a company that manufactures and sells tobacco in the United Kingdom, that are in the possession of its attorney, Chadbourne & Parke, and testimony regarding the documents. Neither Gallaher nor Chadbourne & Parke are defendants in the Humphrey action. Chadbourne contends that the subpoena is improper since the documents are not relevant to claims in the Humphrey action, that it improperly invades the attorney-client and work product privilege since the documents are the result of Chadbourne’s legal review of Gallaher documents for potential litigation in the United Kingdom and disclosure would adversely impact Gallaher’s ability to defend itself. Chadbourne also raises the claim that neither it nor Gallaher are within the jurisdiction of the Minnesota court nor did they have an opportunity to contest document demands before the Minnesota court. Finally, Chadbourne asserts that to the extent documents should be produced, the Hague Convention supplies the appropriate means to obtain such documents.
Kirkland & Ellis, on behalf of Brown & Williamson, seeks to compel Chadbourne to produce the Gallaher documents and testify regarding them. Initially, it contends that the scope of the subpoena is proper. It notes the Minnesota court has held that the documents are relevant to the issues in the Humphrey case and that Brown & Williamson is subject to severe sanctions for failure to produce the documents, that the documents are not privileged and the Hague Convention is not relevant since the documents are in this country, albeit the property of Gallaher, a foreign corporation.
Prior to April 1994, American Brands owned as wholly owned subsidiary entities American Tobacco and Gallaher. In April
1994, American Brands entered into a contract with BAT, the parent company of Brown & Williamson, to purchase American Tobacco. The sale occurred in December 1994. In February
1995, American Tobacco was merged with Brown & Williamson. In May 1997, American Brands which owned Gallaher spun off Gallaher Limited as an independent company.
CPLR 3102 (e)
CPLR 3102 (e) is an adaption of the Uniform Foreign Depositions Act (see, Siegel, NY Prac § 352 [2d ed 1991]). Its purpose is to permit a party from another jurisdiction to utilize the mechanism of New York’s courts to obtain discovery in an ac *77 tion pending in another jurisdiction (see, Matter of Ayliffe & Cos., 166 AD2d 223 [1st Dept 1990] Matter of Shea Gould Climenko & Casey v Simpson Thacher & Bartlett, 98 Misc 2d 484 [Sup Ct, NY County 1979]). In Shea Gould (supra), Justice Shanley Egeth held that a New York court acting under CPLR 3102 (e) was bound to accept the determination of the Pennsylvania court as to the scope of permissible disclosure. Similarly in this case, petitioner Kirkland & Ellis asserts that the determination of Judge Fitzpatrick is dispositive and must bind this court and compel production of the documents.
Generally, “[t]he court’s inquiry with respect to objections raised by persons required to testify pursuant to CPLR 3102 (e) is limited to determining (1) whether the witnesses’ fundamental rights are preserved; (2) whether the scope of inquiry falls within the issues of the pending out-of-State action; and (3) whether the examination is fair * * * The courts ‘will not prejudge the materiality or the competency of the evidence in a cause pending in another jurisdiction and will afford the widest possible latitude in the conduct of such examinations.’ ” (Matter of Ayliffe & Cos., supra, at 224 [citations omitted].)
However, the court retains the authority under CPLR 3103 (a) to quash subpoenas under CPLR 3102 (e) (see, Matter of Lange [Doe v Roman Catholic Diocese of Dallas], 170 Misc 2d 43 [Sup Ct, NY County 1996], affd 245 AD2d 118 [1st Dept, 1997]). Subpoenas have been quashed due to legislatively enacted privileges (see, Matter of Pennzoil Co., 108 AD2d 666 [1st Dept 1985] [limiting a deposition based on New York State’s Shield Law, Civil Rights Law § 79-h]), due to an independent determination that the material sought is not critical or necessary (see, Matter of Brown & Williamson Tobacco Corp. v Wigand, 228 AD2d 187 [1st Dept 1996]) and to prevent unnecessary harassment (Matter of Lange v Roman Catholic Diocese of Dallas, supra). These cases require this court to exercise its discretion to review the subpoena for overbreadth and impact on privileged material. This court may not simply rubber stamp the decision of the Minnesota court. While there is great public interest and significant controversy regarding tobacco litigation, the same rules of law apply in these matters, and this court must decide the issues based not on the identity of the parties but upon established principles of law.
Viewed from this perspective, it is clear that the subpoena directed at the files in the possession of a New York law firm, Chadbourne & Parke, representing a corporation, Gallaher, *78 that manufactures and sells tobacco in the United Kingdom and for which there is no evidence that files were transferred from a former affiliated company, must be quashed. The demanded documents and the testimony sought regarding them were created by or separated from other documents as part of Gallaher’s and its counsel’s efforts to defend Gallaher in anticipation of litigation. A party’s ability to rely on its counsel would be severely impaired if documents created under its counsel’s advice or documents sifted and segregated by its counsel have to be produced. The production of these documents would give another party a window into the law firm’s analysis and strategy (see, Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371 [1991]). This court will not permit such fundamental unfairness. The documents are privileged both under New York law and English law.
This court therefore quashes the subpoena pursuant to CPLR 3103 (a).[2]

. In this regard, this court notes that under New York law, 22 NYCRR 130-1.2 provides for a maximum sanction of $10,000 for frivolous activity.

. Since the documents demanded are within the jurisdiction of this court, the Hague Convention would not apply. However, since the court has quashed the subpoena on other grounds, this issue is academic.